**Nos. 2012-1548, 2012-1549**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————

APPLE INC. AND NEXT SOFTWARE, INC. (formerly known as NeXT Computer, Inc.),

*Plaintiffs-Appellants,*

— v. —

MOTOROLA, INC. (now known as Motorola Solutions, Inc.) AND MOTOROLA MOBILITY, INC.,

*Defendants-Cross-Appellants.*

———————————

Appeals from the United States District Court for the Northern District of Illinois, Case No. 11-CV-8540, Judge Richard A. Posner

———————————

## BRIEF OF AMICUS CURIAE FEDERAL TRADE COMMISSION SUPPORTING NEITHER PARTY

———————————

DAVID C. SHONKA,
*Acting General Counsel*

WILLIAM COHEN,
*Deputy General Counsel*

WILLIAM F. ADKINSON Jr.,
*Attorney*

RICHARD M. BRUNELL,
*Senior Advisor for Competition Matters*

SUZANNE MUNCK af ROSENCHOLD,
*Chief Counsel for Intellectual Property*

**FEDERAL TRADE COMMISSION**
600 Pennsylvania Ave, NW
Washington, DC 20580
202-326-2709

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES………………………………………………………ii

INTEREST OF AMICUS CURIAE CURIAE………..……………………………1

INTRODUCTION………………………………………………………………..2

ARGUMENT……………………………………………………………………..4

      I.      AVOIDING PATENT HOLD-UP IS AN IMPORTANT
            CONSIDERATION IN EVALUATING WHETHER AN
            INJUNCTION SHOULD BE ENTERED....……................................4

      II.     THE DISTRICT COURT PROPERLY APPLIED THE *EBAY*
            FACTORS IN DENYING MOTOROLA REQUEST FOR
            INJUNCTIVE RELIEF……………………………………....…..7

CONCLUSION…………………………………………………………….....16

CERTIFICATE OF COMPLIANCE…………………………………………...17

CERTIFICATE OF SERVICE…………………………………………………18

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE

*Active Video Networks, Inc. v. Verizon Communs., Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)……………………………………………8, 10

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
  579 F. Supp. 2d 554 (D. Del. 2008)…………………………………………10-11

*Apple Inc. v. Samsung Elecs. Co.*,
  695 F. 3d 1370 (Fed. Cir. 2012) ........................................................ 3-4

*Apple, Inc. v. Motorola Mobility, Inc.*,
  2012 WL 3289835 (W.D. Wisc. Aug. 10, 2012) ................................12

*Apple, Inc. v. Motorola Mobility, Inc.*,
  2012 WL 5416941 (W.D. Wisc. Oct. 29, 2012) ........................ 6-7, 10

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) ..................................................................4

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................... *passim*

*Foster v. Am. Mach. & Foundry Co.*,
  492 F.2d 1317 (2d Cir. 1974) ............................................................14

*Hoe v. Boston Daily Adver. Corp.*,
  14 F. 914 (Cir. Ct. D. Mass. 1883) ....................................................14

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  609 F. Supp. 2d 951 (N.D. Cal. 2009)................................... 11, 12, 14

*MercExchange, L.L.C. v. eBay, Inc.*,
  500 F. Supp. 2d 556 (E.D. Va. 2007)…………………………..…10, 14-15

*Microsoft Corp. v. Motorola Inc.*, No. C10-1823-JLR
  (W.D. Wash. Nov. 30, 2012)……………………………………………..10

*New York City v. Pine*,
   185 U.S. 93 (1902) ...............................................................9

*Ricoh Co. Ltd. v. Quanta Computer, Inc.*,
   2010 WL 1607908 (W.D. Wisc. 2010)...........................................15

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011) ...........................................8

*Telcordia Technologies, Inc. v, Cisco Systems, Inc.*,
   592 F. Supp. 2d 727 (D. Del. 2009)…………………………………………11

## STATUTES

Federal Trade Commission Act, 15 U.S.C. §§ 41 *et seq*…………………..……....… 1

35 U.S.C. § 283…………………………………………………………….…7

## MISCELLANEOUS

Knut Blind et al., *Study on the Interplay Between Standards and Intellectual*
   *Property Rights (IPRs)* (Apr. 2011)…………………………………….....13

Michael W. Carroll, *Patent Injunctions and the Problem of Uniformity of Cost*,
   13 Mich. Telecomm. Tech. L. Rev. 421 (2007).................................................13

Joseph Farrell et al., *Standard Setting, Patents and Hold-Up*,
   74 Antitrust L.J. 603 (2007) ..................................................................4

Fed. Trade Comm'n, *The Evolving IP Marketplace: Aligning Patent*
   *Notice and Remedies with Competition* (Mar. 2011)…………………...1, 7, 8, 12

Fed. Trade Comm'n, *To Promote Innovation: The Proper Balance of Competition*
   *and Patent Law and Policy* (Oct. 2003)…………...………………………….....1

Herbert Hovenkamp, *Competition in Information Technologies: Standards-*
   *Essential Patents, Non-Practicing Entities and FRAND Bidding*
   (Oct. 2012)…………………………………………………………………9

Mark A. Lemley, *The Ongoing Confusion Over Ongoing Royalties*,
   76 Mo. L. Rev. 695 (2011) ..................................................................8

Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*,
85 Tex. L. Rev. 1991 (2007)……………………………………………7, 13

Prepared Statement of the Federal Trade Commission Before the U.S. Senate
Committee on the Judiciary Concerning "Oversight of the Impact on
Competition of Exclusion Orders to Enforce Standard-Essential Patents,"
July 11, 2012……………………………………………....…….…………..1-2

Suzanne Michel, *Bargaining for RAND Royalties in the Shadow of Patent
Remedies Law*,
77 Antitrust L. J. 889 (2011) ...............................................................................9

Eric Stasik, *Royalty Rates and Licensing Strategies for Essential Patents on LTE
(4G) Telecommunications Standards*, les Nouvelles, Sept. 2010 …………… .13

Third Party United States Federal Trade Commission's Statement on the Public
Interest, In re Certain Gaming and Entertainment Consoles, Related Software,
and Components Thereof, ITC Inv. No. 337-TA-752 (June 6, 2012)..................1

U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Enforcement and
Intellectual Property Rights Promoting Innovation
and Competition* (Apr. 2007) …………......……...………………….........1, 4

U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidelines for the Licensing
of Intellectual Property* (1995)…………………………………………….....1

## INTEREST OF AMICUS CURIAE

The Federal Trade Commission ("FTC") is an independent federal agency, charged with enforcing the antitrust laws, promoting the efficient function of the marketplace, and protecting consumer welfare. *See* 15 U.S.C. §§ 41 *et seq.* The FTC has substantial experience applying its competition policy expertise to the patent system to advance the goals of enhancing consumer welfare and promoting innovation.[1] Among other issues, the FTC has addressed the competitive effects of injunctive relief for infringement of patented technologies that are essential to implementing consensus industry standards.[2] In filing this amicus brief, the

---

[1] Fed. Trade Comm'n, *The Evolving IP Marketplace: Aligning Patent Notice and Remedies with Competition* (Mar. 2011) ("*2011 FTC IP Report*"), *available at* http://www.ftc.gov/os/2011/03/110307patentreport.pdf; *see also* U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Enforcement and Intellectual Property Rights: Promoting Innovation and Competition* (Apr. 2007) ("*2007 FTC/DOJ IP Report*"), *available at* http://www.ftc.gov/reports/innovation/P040101Promoting InnovationandCompetitionrpt0704.pdf; Fed. Trade Comm'n, *To Promote Innovation: The Proper Balance of Competition and Patent Law and Policy* (Oct. 2003), *available at* http://www.ftc.gov/os/2003/10/innovationrpt.pdf; U.S. Dep't of Justice & Fed. Trade Comm'n, *Antitrust Guidelines for the Licensing of Intellectual Property* (1995), *available at* http://www.ftc.gov/bc/0558.pdf.

[2] *See 2011 FTC IP Report* at 234-35; 2007 *FTC/DOJ IP Report* at 35 n.11; Third Party U.S. Federal Trade Commission's Statement on the Public Interest, *In re Certain Gaming and Entertainment Consoles, Related Software, and Components Thereof*, ITC Inv. No. 337-TA-752 (June 6, 2012), *available at* http://www.ftc.gov/os/2012/06/1206ftcgamingconsole.pdf; Prepared Statement of the FTC Before the U.S. Senate Committee on the Judiciary Concerning "Oversight of the Impact on Competition of Exclusion Orders to Enforce Standard-Essential Patents," July 11, 2012, *available at* http://www.ftc.gov/os/testimony/ 120711standardpatents.pdf.

Commission seeks to ensure that any ruling in this case takes into account the competition policy issues associated with injunctions as a remedy for infringement of a standard-essential patent ("SEP").[3]

## INTRODUCTION

These appeals involve patent infringement claims asserted by Apple, Inc. ("Apple") and Motorola, Inc. ("Motorola") against each other relating to technologies used in mobile phones and tablets. After dismissing a number of the patent claims on the merits on partial summary judgment, the district court dismissed all of the remaining claims (involving four Apple patents and one Motorola "standard-essential" patent) on the ground that, assuming infringement, neither Apple nor Motorola offered sufficient evidence to prove damages or an entitlement to injunctive or any other relief. *See* Opinion and Order of June 22, 2012 ("Remedy Op.").

---

[3] Commissioner Rosch concurs in the submission of this brief. He is of the view that the issuance of injunctive relief is inappropriate where the patent holder has made a FRAND commitment for a standard essential patent, even if the patentee contends that it has met its FRAND obligation. In his view, a FRAND pledge appears to be, by its very nature, a commitment to license; if so, seeking injunctive relief would be inconsistent with that commitment. Commissioner Rosch thus submits that if a court concludes that a party, or its predecessor in interest, made a FRAND commitment with respect to a SEP, an injunction should be denied for that patent. In his view, the only exception to this is when the licensee refuses to comply with the decision of a federal court or some other neutral arbitrator defining the FRAND terms.

The FTC submits this brief to address the district court's application of *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), to Motorola's request for injunctive relief for infringement of its standard-essential patent.[4]  Specifically, the brief explains that the district court properly applied *eBay* in determining that Motorola was not entitled to an injunction, where Motorola had committed to license that patent to anyone willing to accept fair, reasonable, and non-discriminatory ("FRAND" or "RAND") terms, and hence "implicitly acknowledged that a royalty is adequate compensation for a license to use that patent."  Remedy Op. at 18-19.  More generally, this brief addresses the question of how the *eBay* factors may be applied to mitigate the problem of patent hold-up, namely the use of injunctive relief as "undue leverage in negotiations" to obtain compensation in excess of the actual value of the patented technology.  *eBay*, 547 U.S. at 396 (Kennedy, J., concurring); *see Apple Inc. v. Samsung Elecs. Co.*, 695 F. 3d 1370, 1375 (Fed. Cir. 2012) (suggesting that injunction is inappropriate when "the patentee seeks to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant").  The problem of patent hold-up can be particularly acute in the standard-setting context, where an

---

[4] For purposes of this brief, the FTC assumes that the district court's factual determinations are correct.  While the district court's opinion raises additional issues regarding remedies for infringement of non-standard-essential patents that could have important implications for competition and innovation, we do not address those issues here.

entire industry may be locked into a standard that cannot be avoided without

infringing or obtaining a license for numerous (sometimes thousands) of standard-

essential patents.

## ARGUMENT

## I.  AVOIDING PATENT HOLD-UP IS AN IMPORTANT CONSIDERATION IN EVALUATING WHETHER AN INJUNCTION SHOULD BE ENTERED

Firms in the information technology and telecommunications industries

frequently resolve interoperability problems through voluntary consensus standard

setting conducted by standard-setting organizations ("SSOs").  Interoperability

standards can create enormous value for consumers by increasing competition,

innovation, product quality, and choice.  However, incorporating patented

technologies into standards also has the potential to distort competition by enabling

SEP owners to negotiate high royalty rates and other favorable terms, after a

standard is adopted, that they could not credibly demand beforehand, a form of

"patent hold-up."  *See generally* Joseph Farrell et al., *Standard Setting, Patents and

Hold-Up*, 74 Antitrust L.J. 603 (2007); *2007 FTC/DOJ IP Report* at 35 n.11, 37-

40; *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 310-14 (3d Cir. 2007).

The possibility of patent hold-up derives from changes in the relative costs

of once competing technologies as a result of the standard setting process.  Prior to

adoption of a standard, alternative technologies compete to be included in the

standard.  SSO members often agree to license SEPs on RAND terms as a *quid pro quo* for the inclusion of their patents in a standard.  Once a standard is adopted, implementers begin to make investments tied to the standard.  Because it may not be feasible to deviate from the standard unless all or most other participants in the industry agree to do so in compatible ways, and because all of these participants may face substantial switching costs in abandoning initial designs and substituting a different technology, an entire industry may become locked into a standard, giving a SEP owner ability to demand and obtain royalty payments based not on the value of the invention, but on the costs and delays of switching away from the standardized technology.

Hold-up and the threat of hold-up can deter innovation by increasing costs and uncertainty for other industry participants, including those engaged in inventive activity.  It can also distort investment and harm consumers by breaking the connection between the value of an invention and its reward – a connection that is the cornerstone of the patent system.  The threat of hold-up may reduce the value of standard setting, leading firms to rely less on the standard setting process and depriving consumers of the substantial procompetitive benefits of standard setting.

RAND commitments mitigate the risk of patent hold-up, and encourage investment in the standard.  After a RAND commitment is made, the patentee and the implementer will typically negotiate a royalty or, in the event they are unable to

agree, may seek a judicial determination of a reasonable rate. However, a royalty negotiation that occurs under the threat of an injunction may be heavily weighted in favor of the patentee in a way that is in tension with the RAND commitment. High switching costs combined with the threat of an injunction could allow the patentee to obtain unreasonable licensing terms despite its RAND commitment because implementers are locked into practicing the standard. The resulting imbalance between the value of the patented technology and the rewards to the patentee may be especially acute where the injunction is based on a patent covering a minor component of a complex multicomponent product, as is often the case with standard-essential patents in information technology industries.

Under these circumstances, the threat of an injunction may allow the holder of a RAND-encumbered SEP to realize royalty rates that reflect the investments firms make to implement the standard, rather than the competitive value of the patented technology, which could raise prices to consumers while undermining the standard-setting process. *See Apple, Inc. v. Motorola Mobility, Inc.*, 2012 WL 5416941, *15 (W.D. Wisc. Oct. 29, 2012) ("[F]rom a policy and economic standpoint, it makes sense that in most situations owners of declared-essential patents that have made licensing commitments to standards-setting organizations

should be precluded from obtaining an injunction or exclusionary order that would bar a company from practicing the patents.").[5]

## II.    THE DISTRICT COURT PROPERLY APPLIED THE *EBAY* FACTORS IN DENYING MOTOROLA'S REQUEST FOR INJUNCTIVE RELIEF

*eBay* provides a framework that courts can use to mitigate the risk of patent hold-up.  Rejecting any categorical rule favoring injunctions, the Court in *eBay* held that well-established principles of equity applied to permanent injunctions under the Patent Act.  547 U.S. at 391; *see* 35 U.S.C. § 283 (district court "*may* grant injunctions in accordance with the principles of equity") (emphasis added). The Court listed four equitable factors that a patentee must satisfy to obtain an injunction:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

---

[5] An injunction may also facilitate patent hold-up outside the standard-setting context when the patent covers only a minor feature of a multicomponent product. If the patent is easy to design around at the product development stage (and hence its value is relatively low), but costly to do so after the implementer has made irreversible investments in producing and distributing the product with the infringing feature, the patent holder may be able to use the injunction to obtain compensation far greater than the competitive value of the technology.  *See generally* Mark A. Lemley & Carl Shapiro, *Patent Holdup and Royalty Stacking*, 85 Tex. L. Rev. 1991, 1993 (2007); *2011 FTC IP Report* at 225-27.

(4) that the public interest would not be disserved by a
permanent injunction.

547 U.S. at 391.[6]

The district court held that the first two *eBay* factors militate against
injunctive relief against Apple because Motorola could not establish that it would
be irreparably harmed or that monetary relief (an ongoing royalty) would be
inadequate[7] where Motorola had committed to the European Telecommunications
Standards Institute (ETSI) to license its '898 patent at issue "to anyone on fair,
reasonable, and nondiscriminatory [FRAND] terms, as required by the standards-
setting organization as a condition of the patented technology's being deemed

---

[6] *eBay's* equitable analysis allows a court "to compare the costs and benefits of an
injunction with the costs and benefits of the substitute equitable remedy of a . . .
running (ongoing) royalty."  Remedy Op. at 31; *see ActiveVideo Networks, Inc. v.
Verizon Commc'ns., Inc.*, 694 F.3d 1312 (Fed. Cir. 2012) (district court abused its
discretion in granting permanent injunction where ongoing royalty would be
adequate to compensate patentee); *see generally* Mark A. Lemley, *The Ongoing
Confusion Over Ongoing Royalties*, 76 Mo. L. Rev. 695 (2011).  In particular, a
court may consider the extent to which an ongoing royalty may undercompensate
the patentee because it does not capture all the harms from infringement, versus the
extent to which an injunction may overcompensate the patentee because of hold-
up.  *See 2011 FTC IP Report* at 141 ("To align the patent system and competition
policy, it is important that compensatory damages and injunctions be assessed in a
manner that aligns a patentee's compensation with the invention's economic
value.").

[7] This court has noted that "the issues of irreparable harm and adequacy of
remedies at law are inextricably intertwined."  *ActiveVideo Networks,* 694 F.3d at
1337.  Following *eBay*, there is no presumption of irreparable harm.  *See Robert
Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

essential to compliance with the standard." Remedy Op. at 15. The court

concluded, "A FRAND royalty would provide all the relief to which Motorola

would be entitled if it proved infringement of the '898 patent, and thus it is not

entitled to an injunction." *Id.* at 21.

The district court was correct.[8] As the court noted, a FRAND commitment

means that the patentee "implicitly acknowledged that a royalty is adequate

compensation for a license to use that patent." Remedy Op. at 18-19; *see* Herbert

Hovenkamp, *Competition in Information Technologies: Standards-Essential*

*Patents, Non-Practicing Entities and FRAND Bidding* 14 (Nov. 2012), *available at*

http://ssrn.com/abstract=2154203 ("The fact that the patent in question has already

been FRAND encumbered establishes that the patentee's reasonable expectation

was the right to obtain FRAND royalties, not to exclude."); Suzanne Michel,

*Bargaining for RAND Royalties in the Shadow of Patent Remedies Law*, 77

Antitrust L. J. 889, 908 (2011) ("A prior RAND commitment, as an expressed

intention to license broadly, provides strong evidence that denial of an injunction

---

[8] The district court recognized that an injunction may be warranted under *eBay* if "Apple refuses to pay a royalty that meets the FRAND requirement." Remedy Op. at 18. More generally, in circumstances where an infringer is unable or unwilling to pay an ongoing royalty, the harm to the patentee presumably cannot be compensated with damages. *See New York City v. Pine*, 185 U.S. 93, 108 (1902) (court may order that injunction will issue if the defendant fails to pay damages). However, the district court apparently determined that Apple is not an unwilling licensee that waived its right to a FRAND license. Remedy Op. at 20.

and ongoing royalties will not irreparably harm the patentee.").  Similarly, Judge

Robart recently dismissed Motorola's claim for injunctive relief on RAND-

encumbered patents, finding that the RAND license that the parties will enter into

though the litigation "will adequately remedy Motorola as a matter of law,"

precluding Motorola from establishing irreparable harm and inadequate remedy at

law as required under *eBay*.  Order Granting Microsoft's Motion Dismissing

Motorola's Claim for Injunctive Relief at 12-15, *Microsoft Corp. v. Motorola Inc.*,

No. C10-1823-JLR (W.D. Wash. Nov. 30, 2012).

   This court has held that a practice of widespread licensing, including offers

to license to the defendant, strongly militates against a finding of irreparable harm.

*See ActiveVideo Networks,* 694 F.3d at 1339 (reversing grant of injunction: "In

light of the record evidence including ActiveVideo's past licensing of this

technology and its pursuit of Verizon as a licensee, no fact finder could reasonably

conclude that ActiveVideo would be irreparably harmed by the payment of a

royalty (a licensing fee)."); *see also MercExchange, L.L.C. v. eBay, Inc.*, 500 F.

Supp. 2d 556, 570-71 (E.D. Va. 2007) (patentee's "willingness to freely license its

patents . . . weighs against the need for an equitable remedy as it evidences

MercExchange's willingness to forego its right to exclude in return for money");

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d

554, 560 (D. Del. 2008) ("[m]oney damages are rarely inadequate" when patentee has been willing to grant license to competitors).

*A fortiori*, a commitment to offer a license to *all* comers on FRAND terms should be sufficient to establish that a reasonable royalty is adequate to compensate the patentee for infringement by any particular implementer willing and able to abide by those terms. *Cf. Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 986 (N.D. Cal. 2009) (injunction denied with respect to standard-essential patents that were not even subject to FRAND commitments where, *inter alia*, patentee's historical practice of licensing suggests that it "is primarily concerned with monetary compensation for the use of its patented technology"); *Telcordia Techs., Inc. v. Cisco Systems, Inc.*, 592 F. Supp. 2d 727, 748 & n.10 (D. Del. 2009) (same), *aff'd in relevant part*, 612 F.3d 1365 (Fed. Cir. 2010).[9]

The other *eBay* factors (balance of hardships and public interest) also can be expected to militate against injunctive relief in the case of standard-essential patents. "The infringer [of a standard-essential patent] may face significant hardship as a result of an injunction if it is impossible to participate effectively in

---

[9] Motorola acknowledges that its "patents in suit enjoy a rich history of being a part of [a] licensing portfolio granted to much of the wireless industry." Motorola's Motion for Summary Judgment Regarding Damages for the Apple Asserted Patents at 4 n.1 (Dkt. #982, filed June 1, 2012).

the market without complying with the standard. Design-around, at any cost, may not be an option." *FTC 2011 IP Report* at 234; *cf. Hynix*, 609 F. Supp. 2d at 984-85 (injunction with respect to SEP would "decimate" infringer's business). The district court recognized this hardship when it asked, "How could [Motorola] be permitted to enjoin Apple from using an invention that it contends Apple *must* use if it wants to make a cell phone with UMTS telecommunications capability—without which it would not be a cell *phone*." Remedy Op. at 19; *see* Opinion and Order of May 22, 2012 at 45 (explaining that an injunction would prevent Apple from selling iPhones that work on the AT&T network).

The public interest in promoting innovation and protecting consumers also weighs heavily against an injunction here. To be sure, consumers would be harmed by the immediate impact of being deprived of a popular product.[10] But consumers would also suffer in the longer run because an injunction would reduce the returns to innovation by Apple and other patent holders who have patents that are essential to the same standard or otherwise read on Apple's excluded products,

---

[10] In arguing that an injunction should not issue in favor of Apple, Motorola noted that "any injunction against Motorola would be a disservice to competition in the cell phone market." Motorola's Motion and Memorandum in Support of its Motion for Summary Judgment of No Injunctive Relief at 2 n.1 (Doc. #974, filed May 30, 2012) (citation and internal quote marks omitted). The same logic would seem to apply to an injunction against Apple.

who may face lower royalties.[11]  *See* Lemley & Shapiro, *supra*, at 2010-17;

Michael W. Carroll, *Patent Injunctions and the Problem of Uniformity of Cost*, 13

Mich. Telecomm. Tech. L. Rev. 421, 437 (2007) ("From the perspective of the

patent system, an injunction in favor of the small-component patentee may well be

robbing Peter to pay Paul.").  Injunctive relief should not be permitted to allow the

owner of standard-essential patent subject to a RAND obligation to appropriate for

itself the value created by numerous other innovators that build on or contribute to

the standard at issue.[12]

Insofar as Motorola seeks an injunction not for the purpose of excluding

Apple's products from the market, but to bring Apple to the table to negotiate a

---

[11] The '898 patent was declared essential to the Universal Mobile Telecommunications Standard (UMTS), a third-generation (3G) standard used  by certain cell phone carriers (such as AT&T) that enables communication between cell phones and cell towers.  *See* Remedy Op. at 14; *Apple, Inc. v. Motorola Mobility, Inc.*, 2012 WL 3289835, *5-6 (W.D. Wisc. Aug. 10, 2012).  Motorola's patent is one of more than 2000 patents that have been declared essential to the UMTS standard. *See* Knut Blind et al., *Study on the Interplay Between Standards and Intellectual Property Rights (IPRs)* 32, 36 (Apr. 2011), http://ec.europa.eu/enterprise/policies/ european-standards/files/standards_policy/ipr-workshop/ipr_study_final_report _en.pdf  (count based on eliminating duplicates).

[12] Dozens of companies have patents that are declared essential to the UMTS standard.  *See* Eric Stasik, Royalty Rates and Licensing Strategies for Essential Patents on LTE (4G) Telecommunications Standards, les Nouvelles, Sept. 2010, at 114, 117 (57 companies with UMTS declarations); Blind, *supra*, at 45 (nine companies with more than 50 UMTS SEPs).  Moreover, smartphones such as the iPhone incorporate numerous other standards, each with hundreds of additional SEPs. *See* Stasik, *supra*, at 117; Blind, *supra*, at 36.

favorable royalty, its argument does not support an injunction against a willing

licensee.  On the contrary, the use of such leverage is the essence of hold-up.  The

district court correctly observed:

> [D]amages [are not] an inadequate remedy just because, unless backed
> by the threat of injunction, it may induce a settlement for less than the
> damages rightly sought by the plaintiff.  You can't obtain an
> injunction for a simple breach of contract on the ground that you need
> the injunction to pressure the defendant to settle your damages claim
> on terms more advantageous to you than if there were no such
> pressure.

Remedy Op. at 20-21; *see Foster v. Am. Mach. & Foundry Co.*, 492 F.2d 1317,

1324 (2d Cir. 1974) (injunction "is not intended as a club to be wielded by a

patentee to enhance his negotiating stance").

As the concurring Justices explained in *eBay*, an injunction should not be

used to "as a bargaining tool to charge exorbitant fees" or for "undue leverage in

negotiations."   547 U.S. at 396 (Kennedy, J., concurring); *see also Hoe v. Boston

Daily Adver. Corp.*, 14 F. 914, 915 (Cir. Ct. D. Mass. 1883) (denying injunction

where it would be of no "advantage to the plaintiffs, except to coerce a

settlement"); *Hynix*, 609 F. Supp. 2d at 983 n. 29 (denying injunction where

patentee's "motivation in seeking an injunction is less about preventing irreparable

harm and more about extracting punishment or leverage in negotiating with"

infringer); *MercExchange*, 500 F. Supp. 2d at 582 ("Utilization of a ruling in

equity as a bargaining chip suggests both that such party never deserved a ruling in

equity and that money is all that such party truly seeks, rendering money damages an adequate remedy in the first instance."); *Ricoh Co. v. Quanta Computer, Inc.*, 2010 WL 1607908, *4 (W.D. Wisc. 2010) (denying injunction where it "would [not] serve any purpose other than to increase [patentee's] leverage in negotiations for a higher licensing fee.").

## CONCLUSION

Patent hold-up risks harming competition, innovation, and consumers because it allows a patentee to be rewarded not based on the competitive value of its technology, but based on the infringer's costs to switch to a non-infringing alternative when an injunction is issued. *eBay* allows courts to take these important competition and innovation policy issues into account. When a patentee makes a FRAND commitment to an SSO, the irreparable harm analysis, balance of harms, and the public interest will, as here, generally militate against an injunction.

Respectfully submitted,

/s/ Richard M. Brunell

| | |
|---|---|
| David C. Shonka | Richard M. Brunell |
|   Acting General Counsel |   Senior Advisor for Competition Matters |
| William E. Cohen | Suzanne Munck af Rosenschold |
|   Deputy General Counsel |   Chief Counsel for Intellectual Property |
| | William Adkinson, Attorney |
| |   Office of General Counsel Policy Studies |

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20550
(202) 326-3020

December 4, 2012

16

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 3,814 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 with 14-point Times New Roman font.

December 4, 2012                                      /s/ Richard M. Brunell

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2012, I electronically filed a copy of

this Amicus Curiae Brief of the Federal Trade Commission in Support of Neither

Party with the Clerk of the Court using CM/ECF, which will automatically send

email notification of such filing to the following counsel of record:

E. Joshua Rosenkranz
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
Direct: 212-506-5380
Email: jrosenkranz@orrick.com
Fax: 212-506-5151

Mark S. Davies
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005
Direct: 202-339-8631
Email: mark.davies@orrick.com
Fax: 202-339-8500

Katherine M. Kopp
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005
Direct: 202-339-8400
Email: kkopp@orrick.com
Fax: 202-339-8500

Rachel M. McKenzie
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.

Washington, DC 20005
Direct: 202-339-8490
Email: rmckenzie@orrick.com
Fax: 202-339-5800

T. Vann Pearce, Jr.
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005
Direct: 202-339-8696
Email: vpearce@orrick.com
Fax: 202-339-8500

Matthew D. Powers
Tensegrity Law Group, LLP
Suite 360
555 Twin Dolphin Drive
Redwood City, CA 94065
Direct: 650-802-6010
Email: matthew.powers@tensegritylawgroup.com

Brian E. Ferguson
Weil, Gotshal & Manges LLP
1300 Eye Street, N.W., Ste 900
Washington, DC 20005

David A. Nelson
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
Email: davenelson@quinnemanuel.com

Brian Cosmo Cannon
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Email: briancannon@quinnemanuel.com

Raymond N. Nimrod
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Email: raynimrod@quinnemanuel.com

Stephen A. Swedlow
Quinn Emanuel Urquhart & Sullivan, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
Email: stephenswedlow@quinnemanuel.com

Amanda Scott Williamson
Quinn Emanuel Urquhart & Sullivan, LLP
Suite 2450
500 West Madison Street
Chicago, IL 60661
Email: amandawilliamson@quinnemanuel.com


December 4, 2012                                    /s/ Richard M. Brunell